UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
J & J SPORTS PRODUCTIONS, INC.

      Plaintiff,      MEMORANDUM AND ORDER
                  15-CV-6534
 - against –


EXCLUSIVE LOUNGE & GRILL INC
and JENNIFER CRAYTON

      Defendants.
------------------------------------------------------x
GLASSER, Senior United States District Judge:

  Plaintiff J & J Sports Productions, Inc. ("J & J" or "Plaintiff") alleges violations of the Federal Communications Act of 1934, codified at 47 U.S.C. §§ 553 and 605, against defendants Exclusive Lounge & Grill Inc ("Exclusive Lounge") and its principal, Jennifer Crayton ("Crayton"). Defendants were duly served but failed to appear. J & J obtained a certificate of default and now moves the Court to enter default judgment and award damages. For the reasons stated herein, Plaintiff's motion is DENIED.

## BACKGROUND

  Plaintiff has initiated hundreds of cases in this District, and has moved for default judgment in over one hundred of them. J & J licenses the rights to exhibit closed-circuit, pay-per-view television events that are not available for viewing by the general public. ECF 1, Complaint ("Complt."), at ¶ 10. Commercial establishments contract with J & J to access a closed-circuit event and televise it to their clientele in exchange for a fee. Id. at ¶ 11. Transmission of an event is electronically coded, and can only be accessed with electronic decoding equipment provided to those establishments that contract with J & J. Id. at ¶¶ 12, 14.

1

J & J alleges that it owned the exclusive distribution rights in New York to the September 14, 2013 boxing match between Floyd Mayweather Jr. and Saul Alvarez, a/k/a "Canelo," (the "Event"). Id. at ¶ 7. J & J claims that the license agreement allowed it "to sublicense the rights to the marketing and/or sales to the eventual exhibitors of the fight," and that "[i]n this particular case the plaintiff utilized the services of G & G Closed Circuit Events, LLC to handle its marketing and sales." Id. at ¶ 9. It is alleged that both J & J and G & G "contracted with various establishments throughout New York and granted to such establishments the right to broadcast the Event in exchange for a fee." Id. at ¶ 11. All commercial establishments in New York that exhibited the Event were required to obtain authorization from J & J, "and/or its sub-licensee G & G Closed Circuit Events, LLC." Id. at ¶¶ 7, 10.

The Event was advertised on a rate sheet that was filed with this motion (the "Rate Sheet"). ECF 10-3. The Rate Sheet displays a logo for G & G Closed Circuit Events, LLC ("G & G") and lists the costs to televise the Event based on the capacity of the establishment. Id. The Rate Sheet states that commercial locations are required to obtain a license "from the OFFICIAL CLOSED-CIRCUIT PROVIDER, G & G Closed Circuit Events, Inc.," that "[t]here is NO OTHER LEGAL LICENSOR," and that "[a]ny location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY." Id. The Rate Sheet also provides contact information for Art Gallegos, the Vice President of G & G. Id. The Rate Sheet makes no mention of J & J, nor do those initials appears on that sheet.

Exclusive Lounge is a restaurant located in Queens, New York. Complt at ¶ 5. J & J alleges that Exclusive Lounge did not obtain the required authorization from J & J, or G & G, to broadcast the Event, but nonetheless intercepted and televised the Event on its premises. Id. at ¶¶ 13, 15. J & J submits an affidavit from a third party auditor who swears she visited Exclusive

Lounge on September 15, 2013 at 1:26 a.m. and witnessed a broadcast of the boxing match "Mayweather vs. Canelo,"[1] while at least 75 patrons were present. ECF 10-2.[2]

J & J initiated this action on November 16, 2015, alleging various violations of the Federal Communications Act, 47 U.S.C. §§ 553 and 605. Defendants were duly served on December 21, 2015, but never appeared.[3] ECF 5, 6. On January 27, 2016, Magistrate Judge Scanlon ordered Plaintiff to move for a certificate of default within thirty days and, subsequently, for default judgment. See ECF Entry dated Jan. 27, 2016. She also ordered that:

> Any submission in support of a default judgment must address the exclusive license issue identified in J & J Sports Production, Inc. v. El Ojo Agua Corp., 13 Civ. 6173, 2014 WL 4700014 (E.D.N.Y. Aug. 29, 2014); J & J Sports Productions, Inc. v. Sur Lounge Cafe Inc., 15 Civ. 2494 (SJ)(RLM) (Sept. 4, 2015), report and recommendation adopted (E.D.N.Y. Sept. 30, 2015); J & J Sports Productions, Inc. v. Raquel Restaurant Corp., 15 Civ. 2497 (ARR) (RLM), (E.D.N.Y. Sept. 4, 2015), report and recommendation not adopted as case voluntarily discontinued.

Id. (discussed in detail, infra). A certificate of default was entered on February 23, 2016 (ECF 8), and J & J moved for default judgment on April 5, 2016. ECF 11.

---

[1] The Complaint and all motion papers state that the Event was between Floyd Mayweather, Jr. and Saul Alvarez. Complt. at ¶ 7; ECF 10, Hooten Aff., at p. 1; ECF 9-2, Gagliardi Aff., at ¶¶ 3, 5. Based on the Rate Sheet, it appears that "Canelo" is Saul Alvarez's middle name or nickname. See ECF 10-3.

[2] There is no explanation of how that number was arrived at. Head count? Estimate?

[3] The defendants were properly served. Under Fed. R. Civ. P. 4(h)(1)(B), service on a corporation is complete if the summons and complaint are delivered to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Plaintiff served Exclusive Lounge at its business address by delivering the pleadings to "Allison," who was identified as the managing agent and who affirmed she was authorized to accept service on behalf of Exclusive Lounge. ECF 5. Defendant Crayton is an individual and could be served in accordance with the rules of New York. Fed. R. Civ. P. § 4(e)(1). Crayton was served at Exclusive Lounge and Grill, allegedly her actual place of business, by delivering a copy of the summons and complaint to "Allison," her co-worker, and mailing a copy of the pleadings addressed to Crayton to Exclusive Lounge and Grill, in satisfaction of New York C.P.L.R § 308(2). ECF 6.

**LEGAL STANDARD**

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for obtaining a default judgment. Step one requires the court clerk to enter the defendant's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. § 55(a). Plaintiff then moves for default judgment, and it "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." Labarbera v. ASTC Labs., Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

A plaintiff's default is a "concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). However, a default does not excuse defects in plaintiff's pleadings, and allegations are not conceded if demonstrated to be false by evidence on the record. In re Wildlife Ctr., Inc., 102 B.R. 321, 325 (Bankr. E.D.N.Y. 1989). Indeed, "[a]llegations are not well pleaded which are contrary to uncontroverted material in the file of the case.'" Getty Images (US) Inc. v. Advernet, Inc., 797 F. Supp. 2d 399, 439 (S.D.N.Y. 2011); see also J & J Sports Prods., Inc. v. Senor De Chalma Corp., No. 15-CV-6648 (ARR)(CLP), 2016 WL 7655800, at *4 (E.D.N.Y. Dec. 19, 2016), R&R adopted, 2017 WL 61937 (E.D.N.Y. Jan. 5, 2017) (collecting cases).

**DISCUSSION**

The outcome of this motion turns on whether J & J is the proper plaintiff. Under the Federal Communications Act, a "person aggrieved" has standing to bring an action for violation of that Act, and is defined as "any person with proprietary rights in the intercepted communication." 47 U.S.C. §§ 553(c)(1), 605(e)(3)(A), and 605(d)(6). J & J alleges that it had an exclusive license regarding the Event and that it sub-licensed its rights to G & G to provide

sales and marketing services. Complt. at ¶¶ 7, 9. Plaintiff has never submitted the license and sub-license agreements to substantiate those claims. The Rate Sheet, meanwhile, states that G & G has the exclusive license to the Event, and expressly forbids an establishment from broadcasting the Event unless it contracts with G & G, to the exclusion of all others. ECF 10-3 ("There is NO OTHER LEGAL LICENSOR" and "Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY."). In so stating, it makes clear that Exclusive Lounge would have violated the law even if it had contracted with J & J to televise the Event. The Rate Sheet, therefore, flatly contradicts the Complaint's allegation that J & J owned the exclusive license to the Event and was harmed by the unauthorized broadcast. Those allegations are not well-pled, and the Court cannot conclude that J & J maintained a proprietary interest in licensing the Event that was infringed by Exclusive Lounge's broadcast. Without such interest, J & J lacks standing to bring the asserted claims.

Unquestionably, Plaintiff knew of this issue long before it filed this motion. In her order directing Plaintiff to address the "exclusive license issue," Magistrate Judge Scanlon cited a handful of analogous cases which held, as this Court does now, that the Rate Sheet "flatly contradicted" the Complaint. J & J Sports Production, Inc. v. El Ojo Aqua Corp., 13-CV-6173, 2014 WL 4700014, *3 (E.D.N.Y. Aug. 29, 2014), R&R adopted, 2014 WL 4699704 (E.D.N.Y. Sept. 22, 2014); see also J & J Sports Productions, Inc. v. Sur Lounge Cafe Inc., 15-CV-2494 (SJ)(RLM) (Sept. 4, 2015), R&R adopted (E.D.N.Y. Sept. 30, 2015); J & J Sports Productions, Inc. v. Raquel Restaurant Corp., 15-CV-2497 (ARR)(RLM), (E.D.N.Y. Sept. 4, 2015), R&R not adopted as case voluntarily discontinued. Those cases denied default judgment because the contradictory evidence regarding G & G and J & J rendered the allegations of J & J's exclusive license insufficiently pled. Thus, J & J lacked standing to proceed because "it appears that

plaintiff may not have had any legal right to distribute the Event." Senor De Chalma Corp., 2016 WL 7655800, at *5.[4]

The Magistrate clearly intended for Plaintiff to address the discrepancy between the Rate Sheet and Complaint to satisfy the court that J & J actually had, and maintained, the proprietary interest required to bring its asserted claims. That order was ignored. Instead, J & J's motion does not discuss G & G and makes no attempt to explain the issue at all. ECF 9, Memo. of Law (stating that the damage amount is the only issue for the Court to decide, repeating the facts alleged in the Complaint virtually verbatim, and mentioning G & G just one time to say it was J & J's sub-licensee); ECF 10, Hooten Aff. (no mention of G & G); ECF 9-2, Gagliardi Aff. (no mention of G & G and alleging only that Exclusive Lounge failed to contract with J & J). By submitting moving papers that are identical to those it has filed in countless other cases, J & J continues "to file this claim without correcting or explaining the evidence that directly contradict[s] the allegations in the Complaint." Senor de Chalma, 2016 WL 7655800 at *5. In light of the prior decisions noting these pleading deficiencies in precisely similar cases, Fed. R. Civ. P. § 11 is serially disregarded and sanctions pursuant to Rule 11(c)(3) of that Rule will be invoked for its continued disregard.

---

[4] J & J has revised its form complaint since El Ojo Aqua was decided to now include the references to G & G that are present in the Complaint here. On that basis, some judges have distinguished El Ojo Aqua, supra, and granted default judgment in favor of J & J on the same facts. J & J Sports Prods., Inc. v. LX Food Grocery Inc., No. 15-CV-6505, 2016 WL 6905946, at *2 n.1 (E.D.N.Y. Nov. 23, 2016); see also J & J Sports Prods. Inc. v. GPN Bar Inc., No. 15-CV-6504 (FB)(ST), 2016 WL 8139019, at *3 n.3 (E.D.N.Y. Dec. 15, 2016), R&R adopted, 2017 WL 435785 (E.D.N.Y. Feb. 1, 2017); J & J Sports Prods. Inc. v. Johnny's Rest., No. 15-CV-6645 (NG)(ST), 2016 WL 8254906, at *3 n.3 (E.D.N.Y. Dec. 15, 2016), R&R adopted, 2017 WL 591143 (E.D.N.Y. Feb. 14, 2017). However, the Rate Sheet indicates that G & G had the exclusive license regarding the Event, which deprives J & J of standing to bring its claims. The references in the Complaint to G & G do not cure that deficiency. Indeed, those "bare allegations relating to G & G in the complaint do not distinguish this complaint from the prior complaints" that contained no reference to G & G. Senor De Chalma, 15-CV-6648, ECF 19.

For the foregoing reasons, Plaintiff's motion for default judgment is denied, the certificate of default is vacated, and the Complaint is dismissed without prejudice.

SO ORDERED.

Dated: Brooklyn, New York
March 22, 2017

_____/s/_____
I. Leo Glasser